1   Patricia L. Peden (SBN 206440)
    patricia.peden@leclairryan.com
2   LeClairRyan LLP
    44 Montgomery Street, Suite 3100
3   San Francisco, CA  94104
    Telephone: 415-391-7111
4   Facsimile:  415-391-8766

5
    Attorney for Plaintiffs UCP International Company
6   Limited And Global United Enterprises Limited

7

8               **IN THE UNITED STATES DISTRICT COURT**

9              **NORTHERN DISTRICT OF CALIFORNIA**

10                 **SAN FRANCISCO DIVISION**

11

12  **UCP INTERNATIONAL COMPANY
    LIMITED AND GLOBAL UNITED
13  ENTERPRISES LIMITED**                      Case No.

14  Plaintiffs,                                **COMPLAINT FOR
                                               (1) Intentional Interference With
15  vs.                                        Contractual Relations;
                                               (2) Intentional Interference with
16  **BALSAM BRANDS INC. and THOMAS            Prospective Economic Advantage; and
    MACMARTIN HARMAN II**                      (3) Unfair Competition**
17
    Defendants.
18                                             DEMAND FOR JURY TRIAL

19

20

21

22

23

24

25

26

27

28
                            **COMPLAINT**

1    Plaintiffs UCP International Company Limited and Global United Enterprises Limited,

2  collectively ("UCP"), by and through their undersigned counsel, for their Complaint against

3  Defendants, Balsam Brands, Inc. and Thomas Harman, state as follows:

4                                          **THE PARTIES**

5    1.    Plaintiff UCP International Company Limited is a corporation organized and in

6  good standing under the laws of Hong Kong. It is headquartered in Hong Kong.

7    2.    Plaintiff Global United Enterprises Limited is a corporation organized and in

8  good standing under the laws of Hong Kong. It is headquartered in Hong Kong.

9    3.    Defendant Balsam Brands Inc. is a corporation organized under the laws of the

10  State of Delaware with its principal place of business in Redwood City, CA.

11    4.    Defendant Thomas Harman is an individual residing in and domiciled in

12  California.

13                                **JURISDICTION AND VENUE**

14    5.    This Court has federal diversity jurisdiction, 28 U.S.C. 1332, as the parties are

15  completely diverse in citizenship and the amount in controversy exceeds $75,000. This Court

16  has supplemental jurisdiction over UCP's state law claims pursuant to 28 U.S.C. § 1367.

17    6.    All defendants are subject to general personal jurisdiction in California because

18  their contacts with California are substantial or continuous and systematic. Balsam Brands Inc.

19  has its principal place of business in California. Defendant Harman is domiciled in California.

20  These defendants are all "at home" in California.

21    7.    Defendants are subject to specific personal jurisdiction in California. The tortious

22  and unfair acts complained of herein were, on information and belief, undertaken in California.

23  Defendants' California-based acts were undertaken to financially benefit Balsam Brands Inc., a

24  company headquartered in California. The exercise of jurisdiction by the State of California

25  over defendants will not offend traditional notions of fair play and substantial justice.

26    8.    The court has venue over UCP's claims, pursuant to 28 U.S.C. §§ 1391(b)-(c)

27  because a substantial part of the events giving rise to UCP's claim occurred in this district,

28

1   Balsam Brands Inc. and Harman reside in this district, and both are subject to personal

2   jurisdiction here.

3   **INTRADISTRICT ASSIGNMENT**

4       9.      This case should be assigned to the San Francisco or Oakland Divisions under

5   Local Rule 3-2(c) because Balsam Brands Inc. is headquartered in Redwood City California, in

6   San Mateo County.  A substantial part of the events which give rise to the claims raised herein

7   likely occurred in San Mateo County.

8   **FACTUAL BACKGROUND**

9       10.     UCP designs, manufactures and sells home furnishings and housewares.  Among

10  the products UCP makes and sells is an invertible artificial Christmas tree.  Beginning in 2015,

11  UCP had an exclusive arrangement with Cinmar wherein UCP supplied Cinmar with invertible

12  artificial Christmas trees.  In exchange, Cinmar marketed and sold UCP's trees in the United

13  States.  Cinmar owns Frontgate Marketing LLC, and it publishes the Frontgate and Grandin

14  Road catalogs and websites.  Cinmar and Frontgate (collectively "Frontgate") were part of HSN

15  Inc., a $3.3 billion interactive multichannel retailer with strong direct-to-consumer marketing

16  channels. In 2015, Frontgate was expected to circulate more than 85 million home-shopping

    catalogs.

17      11.     In 2009, UCP and Cinmar entered into a valid, enforceable, written Partnership

18  Agreement (Exhibit A).  This Partnership Agreement includes an indemnification clause.  The

19  parties agreed that if Cinmar was sued for patent infringement, UCP would have full

    responsibility for those claims.  The indemnification clause states, in part:

20
21          Vendor represents and warrants to Cinmar that the Products do not infringe upon any
            "Intangible Rights" (as defined below), and Vendor is the owner of, or is licensed to
22          authorize Cinmar to use, all Intangible Rights associated with the Products.  The
            Term "Intangible Rights" means any United States or foreign patents or copyrights or
23          any United States, foreign, state or common law trademark, trade dress, trade name,
            service mark, publicity or privacy right or similar property or other right.  Vendor
24          shall assume full responsibility and shall provide independent legal counsel
            reasonably acceptable to Cinmar for the defense of any claims . . ."

25      In February 2016, Global United Enterprises Limited and Cinmar entered into a valid,

26  enforceable Partnership Agreement.  (Exhibit B).  This Partnership Agreement also contained an

27  indemnification clause giving UCP full responsibility for infringement claims arising from any

    product UCP sold to Cinmar.

28

12.     At all times relevant to this action, UCP enjoyed a profitable economic relationship with Cinmar and Frontgate.

13.     On October 20, 2015, Balsam Brands In. ("Balsam") filed a patent infringement lawsuit against Frontgate. *See Balsam Brands Inc. et al v. Cinmar, LLC et al*., case. No. 3-15-cv-04829 (N.D. Cal.).  Balsam alleged Frontgate infringed Balsam's patents by selling invertible artificial trees made by UCP.   When Balsam filed its lawsuit (the Frontgate Litigation), Balsam knew that UCP provided Frontgate with the invertible artificial trees.

14.     In the high-end artificial Christmas tree market, where trees often sell for $1,000 or more, Balsam and Frontgate are the two main sellers.  Balsam described its competition with Frontgate as "fierce" and "head to head."  Balsam claimed that Frontgate's sale of invertible artificial Christmas trees directly threatened Balsam's sale of its own "Flip Trees."  According to Balsam, continued competition in the invertible Christmas tree market from Frontgate would likely force Balsam to lower the price of its competing Flip Tree.

15.     Balsam knew UCP and Frontgate had valid Partnership Agreements that gave UCP full responsibility for resolving patent-infringement lawsuits.  Balsam obtained a copy of the UCP-Frontgate Partnership Agreements through discovery in the Frontgate Litigation.

16.     Frontgate demanded UCP defend and indemnify it from Balsam's assertions of infringement.  Thereafter, UCP assumed full responsibility for litigating and resolving Balsam's patent infringement claims.

17.     Balsam admits that it knew that UCP was directing and controlling the day-to-day management of the Frontgate Litigation, was funding the Frontgate Litigation, and was doing most of the work in the Frontgate Litigation, by far.

18.     Balsam knew that Frontgate had less incentive than UCP to defeat Balsam's infringement.   Frontgate merely resold UCP's tree.  And, Frontgate sold many products other than the UCP inversion tree. UCP, on the other hand, spent a significant amount of money to design its patented inversion tree, and it was intent on showing it did not infringe Balsam's patents so that UCP could continue to make and sell its tree.

3
COMPLAINT

19.     Balsam admits it knew that Frontgate was UCP's only U.S. customer.  If Balsam could exclude UCP's trees from the market, Balsam would have the relevant U.S. market for artificial Christmas trees to itself.

20.     In late 2016 in the Frontgate litigation, the district court issued a Claim Construction Order was favorable to the defendants in that case.  UCP's counsel, on behalf of Frontgate, indicated the defendants in the Frontgate Litigation would file a motion for summary judgment seeking an order of non-infringement of Balsam's patents.  Balsam admits that a Frontgate victory on the motion for summary judgment would have "cleared UCP for sale of its Inversion Tree in the United States."

21.     Sometime prior to December 19, 2016, defendant Harman contacted unknown persons at Frontgate with the intent of inducing Frontgate to breach its contractual obligations to UCP.  Despite knowing the contractual and business agreements between the parties, Harman intentionally excluded UCP from his discussions with Frontgate.  Balsam and Harman acted to cause Frontgate to breach the Partnership Agreements and to force Frontgate to stop purchasing UCP's trees.

22.     In December of 2016, working directly with Frontgate, and without UCP's knowledge, Balsam brokered a settlement with Frontgate.  Balsam was not entitled to intentionally interfere with UCP's contractual relationship with Frontgate.  Balsam and Frontgate stipulated to dismiss the case with prejudice and the case was dismissed by the court on December 20, 2016.

23.     Following the settlement, Frontgate stopped purchasing inversion trees from UCP.  Upon information and belief, Balsam required Frontgate to stop purchasing trees from UCP as a condition of dismissing it from the lawsuit.  Balsam achieved its stated goal of removing UCP's trees from the U.S. market.

24.     Balsam and Harman's actions caused UCP significant financial harm.  UCP has expended substantial effort and financial resources to design, develop, manufacture and sell its invertible tree.  UCP filed a patent application for its own novel inversion tree design.  Balsam

1   and Harman's tortious conduct deprived UCP of the financial benefits of these efforts.  UCP

2   devoted financial resources to secure a favorable claim construction ruling in the district court so

3   that it could continue to sell invertible artificial Christmas trees to Frontgate.  Balsam and

4   Harman's tortious conduct deprived UCP of the benefit of its successful litigation efforts.  UCP

5   suffered financial harm to its business as a result of losing Frontgate as a customer for its

6   invertible trees, causing UCP lost profits and other compensatory damages.

7        25.     The district court found that UCP's trees do not infringe Balsam's patents.

8   Although there was no merit to Balsam's infringement allegations, UCP has been precluded from

9   selling its trees to Frontgate.  Balsam removed UCP from the market, not by successfully

10  litigating its claims against Frontgate, but rather by intentionally interfering with UCP's

11  contractual relationship with Frontgate.

12                              **FIRST COUNT**
                        **Intentional Interference with**
13              **Contractual Relations Against All Defendants**

14       26.     UCP repeats and re-alleges the allegations of paragraphs 1-25 as if fully set forth

15  herein.

16       27.     The UCP plaintiffs and Cinmar/Frontgate had valid written Partnership

17  Agreements.  These Partnership Agreements included an indemnity clause that gave UCP full

18  responsibility for answering claims for patent infringement.

19       28.     The UCP plaintiffs and Cinmar/Frontgate also had an agreement wherein

20  Frontgate would purchase, on an exclusive basis, UCP's invertible artificial Christmas trees, and,

21  in turn, UCP would meet its obligations under the Partnership Agreements, including its

22  indemnification obligations.

23       29.     At all relevant times, UCP performed its obligations under the Partnership

24  Agreements.

25       30.     Defendants were aware of, and had copies of, the Partnership Agreements.

26  Defendants were also aware of UCP and Frontgate's exclusive sales agreement.

27       31.     Defendants knowingly, intentionally, and improperly interfered with UCP's

28

contractual relationship with Cinmar/Frontgate and induced them to breach its contractual and business relationships with UCP.

32.    Defendants' interference caused a breach of the Partnership Agreements and contractual sales relationship between UCP and Cinmar/Frontgate.

33.    Defendants' unjustified conduct was the moving or procuring cause of the breach of the Partnership Agreements and for the disruption of the contractual sales relationship between the parties.

34.    Defendants' intentional misconduct caused UCP to suffer damages in an amount to be proved at trial.

35.    Defendants acted with malice, oppression and fraud when they intentionally and in conscious disregard of UCP's rights, deliberately induced Cinmar/Frontgate to breach the Partnership Agreements and deprived UCP of its rightful proceeds from its Partnership Agreements with Frontgate.  Accordingly, Plaintiffs are entitled to an award of punitive damages against Defendants in an amount to be proved at trial.

**SECOND COUNT**
**Intentional Interference with Prospective**
**Economic Advantage Against All Defendants**

36.    UCP repeats and re-alleges the allegations of paragraphs 1-35 as if fully set forth herein.

37.    Plaintiffs had an existing business relationship with Cinmar and Frontgate wherein they purchased UCP's invertible artificial trees.  Plaintiffs had enjoyed a successful relationship with Frontgate in the past, and had a high probability of future economic benefit from the parties' business relationships.

38.    Defendants knew of Plaintiffs' economic relationship with Cinmar and Frontgate.

39.    Defendants engaged in wrongful conduct through their tortious interference with Plaintiffs' contractual relationships with Cinmar and Frontgate.

40.    Defendants' wrongful conduct falls outside the boundaries of fair competition to disrupt Plaintiffs' economic relationships with Frontgate.  UCP is informed and believes that

Balsam threatened Frontgate with protracted litigation and resulting disruption to Frontgate's business although it knew, or should have known, that its patent infringement allegations against UCP's trees were unsupported or false.  Balsam knew that it lacked standing to sue Frontgate, and that it could recover no damages from Frontgate.  Yet, Balsam insisted that high-level Frontgate executives be deposed and trial be conducted, although Defendants had no reasonable grounds for believing their representations to be true.  Defendants created an intolerable nuisance in litigation to convince Frontgate that it was cheaper to settle with Defendants rather than litigate.  The Claim Construction Order barred any reasonable claim of infringement, and after the order was issued Balsam's continued litigation was objectively baseless.  Balsam's campaign of unfounded litigation was wrongful conduct beyond the interference itself.

41.     Defendants' actions were designed to disrupt the business relationships between UCP and Frontgate.

42.     Defendants' wrongful conduct was a substantial factor in causing Plaintiffs to suffer damages in an amount in excess of $75,000, and to be established by appropriate proof at trial.

43.     Defendants acted with malice, oppression, and fraud when Defendants intentionally and in conscious disregard of Plaintiffs' rights, deliberately induced Cinmar and Frontgate to breach the Partnership Agreement and deprived Plaintiffs of its rightful proceeds from that Agreement.  Defendants' actions deprived Plaintiffs of the economic benefits they would have enjoyed beyond those provided for in the Partnership Agreement.  Accordingly, Plaintiffs are entitled to an award of punitive damages against Defendants in an amount to be proven at trial.

## THIRD COUNT
### Unfair Competition under §17200 of the California Business and Professional Code and Common Law

44.     UCP repeats and re-alleges the allegations of paragraphs 1-43 as if fully set forth herein.

45.     Defendants having knowingly, intentionally, and improperly interfered with

1    UCP's contractual relationship with Cinmar/Frontgate and induced them to breach its contractual

2    and business relationships with UCP as alleged in the First Count of this complaint in paragraphs

3    26 through 35, which are re-alleged here have knowingly and intentionally committed an

4    unlawful act prohibited by the California Business and Professional Code and common law.

5         46.    Defendants' unlawful conduct was a substantial factor in causing Plaintiffs to

6    suffer damages in an amount in excess of $75,000, and to be established by appropriate proof at

7    trial.

8                                    **PRAYER FOR RELIEF**

9    WHEREFORE, Plaintiffs respectfully prays for relief as follows:

10        A.      For damages in excess of $75,000 according to proof at trial;

11        B.      For prejudgement interest;

12        C.      For all reasonable attorneys' fees, costs of suit;

13        D.      For punitive damages in an amount sufficient to punish Defendants and deter

14   others form engaging in similar misconduct;

15        E.      For injunctive relief voiding any and all agreements between Balsam and

16   Cinmar/Frontgate that precludes Cinmar from purchasing invertible artificial Christmas trees

17   from UCP; and

18        D.      Such further relief as the Court deems just and proper.

19                                     **JURY DEMAND**

20        Plaintiffs demand a jury trial on all claims alleged in this Complaint.

21   Dated:  December 17, 2018

22                                               _/s/ Patricia L. Peden_
                                                 Patricia L. Peden (SBN 206440)
23                                               LECLAIRRYAN LLP
                                                 44 Montgomery Street, Suite 3100
24                                               San Francisco, CA  94104
                                                 Telephone: 415-391-7111
25                                               Facsimile:  415-391-8766
                                                 patricia.peden@leclairryan.com

26
                                                 Attorney for Plaintiffs
27

28
                                          8
                                      COMPLAINT