UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UCP INTERNATIONAL COMPANY LIMITED, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>BALSAM BRANDS INC., et al.,<br><br>Defendants. | Case No. 3:18-cv-07579-WHO<br><br>**ORDER DISMISSING COMPLAINT WITH LEAVE TO AMEND**<br><br>Re: Dkt. No. 20 |

## INTRODUCTION

The facts underlying this case are all-too familiar to me. In the round-three twist of an ongoing dispute between these parties, plaintiffs UCP International Company Limited and Global United Enterprises Limited (collectively, "UCP") bring tort and unfair competition claims against defendants Balsam Brands Inc. and Thomas Harman (collectively, "Balsam"). The claims at the very least relate to litigation that took place before me beginning in October 2015. In that case, Balsam sued Cinmar, LLC and Frontgate Marketing, Inc. (collectively, "Frontgate") for patent infringement (among other claims) relating to the sale of invertible artificial Christmas trees. The trees at issue were made by UCP—Balsam's chief competitor in the artificial Christmas tree market—and Frontgate was their exclusive seller. A year later Balsam and Frontgate stipulated to dismissal with prejudice, and a day after that, UCP filed a complaint against Balsam seeking declaratory judgment of non-infringement. In the second case, I granted summary judgment in favor of UCP.

Now UCP brings another set of allegations: that Balsam interfered with the relationship between UCP and Frontgate and, specifically, induced Frontgate to break its contract with UCP. Before me is Balsam's motion to strike the complaint under California's anti-SLAPP law on the

grounds that the claims arise out of protected activity—namely, its conduct in filing, litigating, and settling the case against Frontgate. Neither party has made the showing necessary to achieve its desired result. Given my knowledge of these cases and for the reasons set forth below, I will dismiss UCP's complaint but grant it leave to amend.

## BACKGROUND

In October 2015, Balsam filed a complaint against Frontgate asserting claims for patent infringement, false marketing and advertising, and violations of California's unfair competition and false advertising laws. 15-cv-4829 Complaint ("*Frontgate* Compl.") [15-cv-4829[1] Dkt. No. 1]. I denied Balsam's motion for a temporary restraining order, and in September 2016 I issued a claim construction order. *See* Order Denying Motion for TRO [15-cv-4829 Dkt. No. 42]; Claim Construction Order [15-cv-4829 Dkt. No. 108]. In December 2016, I issued an order dismissing the case with prejudice in response to the parties' stipulation requesting the same. Order of Dismissal [15-cv-4829 Dkt. No. 155].

The day after the parties stipulated to dismissal of the *Frontgate* litigation, UCP filed a complaint against Balsam seeking a declaratory judgment on non-infringement. Second Complaint [16-cv-7255 Dkt. No. 7[2]]. After a brief stint before a different judge on this court,[3] the case returned to me and I granted summary judgment in favor of UCP. Order Granting Motion for Summary Judgment [16-cv-7255 Dkt. No. 118]. UCP then moved for attorney fees, seeking to collect not only for the second litigation but also for the *Frontgate* litigation. I concluded that UCP was not entitled to fees for the *Frontgate* litigation, to which it was not a party. Order Granting in Part and Denying in Part Motion for Fees ("Fees Order") [16-cv-7255 Dkt. No. 146] 7–11. I granted the motion for some aspects of Balsam's conduct during the second litigation but denied the request under 35 U.S.C. section 285 because "Balsam's litigation positions were not so

---

[1] Where a different case number is not specified, this Order refers to docket entries in the instant action.

[2] Docket number 7 replaced the document that was incorrectly filed at docket number 1.

[3] I recused myself after Balsam hired my old firm and former partner; the case was reassigned to the Honorable William Alsup; he disqualified my old firm and the case was related back to me. *See* 16-v-7255 Dkt. Nos. 71, 72, 74, 105, 106, 110, 113.

2

meritless or objectively unreasonable to justify a finding of exceptionality under Section 285." *Id.* at 12.

UCP filed the instant action on December 17, 2018, and I found that it was related to the prior cases and should be reassigned to me. *See* Complaint ("Compl.") [Dkt. No. 1]; Related Case Order [Dkt. No. 16]. On February 8, 2019, Balsam filed this motion to strike, and I heard argument on April 3, 2019. *See* Motion to Strike ("Mot.") [Dkt. No. 20]; Minute Entry [Dkt. No. 29].

**LEGAL STANDARD**

California Code of Civil Procedure section 425.16 is California's response to "strategic lawsuits against public participation," or SLAPP lawsuits. It was enacted "to provide a procedure for expeditiously resolving nonmeritorious litigation meant to chill the valid exercise of the constitutional rights of freedom of speech and petition in connection with a public issue." *Hansen v. California Dep't of Corr. & Rehab.*, 171 Cal. App. 4th 1537, 1542–43 (2008). It provides that a cause of action against a person "arising from any act of that person in furtherance of the person's right of petition or free speech under the United States Constitution or the California Constitution in connection with a public issue shall be subject to a special motion to strike, unless the court determines that the plaintiff has established that there is a probability that the plaintiff will prevail on the claim." CAL. CIV. PROC. CODE § 425.16(b)(1). An "act in furtherance of the person's right of petition or free speech under the United States Constitution or the California Constitution in connection with a public issue" includes:

> (1) any written or oral statement or writing made before a legislative, executive, or judicial proceeding, or any other official proceeding authorized by law,
>
> (2) any written or oral statement or writing made in connection with an issue under consideration or review by a legislative, executive, or judicial body, or any other official proceeding authorized by law,
>
> (3) any written or oral statement or writing made in a place open to the public or a public forum in connection with an issue of public interest, or
>
> (4) any other conduct in furtherance of the exercise of the constitutional right of petition or the constitutional right of free speech in connection with a public issue or an issue of public interest.

3

1  CAL. CIV. PROC. CODE § 425.16(e).

2  "When served with a SLAPP suit, the defendant may immediately move to strike the complaint under Section 425.16." *Hansen*, 171 Cal. App. 4th at 1543. That motion is known as an anti-SLAPP motion. To determine whether an anti-SLAPP motion should be granted, the trial court must engage in a two-step process. "First, the defendant must make a prima facie showing that the plaintiff's suit arises from an act in furtherance of the defendant's rights of petition or free speech." *Mindys Cosmetics, Inc. v. Dakar*, 611 F.3d 590, 595 (9th Cir. 2010) (citation and internal quotation marks omitted). "Second, once the defendant has made a prima facie showing, the burden shifts to the plaintiff to demonstrate a probability of prevailing on the challenged claims." *Id*. "[T]he anti-SLAPP statute cannot be used to strike federal causes of action." *Hilton v. Hallmark Cards*, 599 F.3d 894, 901 (9th Cir. 2010).

**DISCUSSION**

Balsam argues that UCP's claims arise from its constitutionally protected activity of filing, litigating, and settling a patent case against Frontgate. UCP opposes on three grounds. First, the commercial speech exception to the anti-SLAPP law applies. Second, Balsam fails to show that the claims arise out of protected litigation and settlement activity. Third, even if it did, UCP's claims are likely to prevail.

Neither party has convinced me that it is entitled to the relief it seeks. Under the first prong of the Anti-SLAPP analysis, the commercial speech exception does not apply, and UCP's claims appear inseparable from Balsam's protected litigation conduct. But in assessing the probability UCP will prevail under the second prong, Balsam has only challenged the legal sufficiency of the complaint. Although I could—and would—conclude as a matter of law that the *Frontgate* litigation was not a sham and that the *Noerr-Pennington* doctrine applies, my analysis is constrained to the complaint's sufficiency under Rule 12. Given these considerations, I will dismiss UCP's complaint with leave to amend.

**I.  ARISING FROM A PROTECTED ACTIVITY**

"A claim arises from protected activity when that activity underlies or forms the basis for the claim." *Park v. Bd. of Trustees of California State Univ.*, 2 Cal. 5th 1057, 1062 (2017). The

4

movant cannot meet its burden by merely showing that an action was filed after protected activity took place, even if the protected activity might have triggered the action. *Navellier v. Sletten*, 29 Cal. 4th 82, 89 (2002). Instead, the arising from requirement is satisfied when "*the defendant's conduct by which plaintiff claims to have been injured* falls within one of the four categories described in subdivision (e)." *Park*, 2 Cal. 5th at 1063 (emphasis in original) (internal quotation marks and citation omitted).

Statements made in connection with civil litigation are protected. CAL. CIV. PROC. CODE § 425.16(e)(2) (covering "any written or oral statement or writing made in connection with an issue under consideration or review by a legislative, executive, or judicial body, or any other official proceeding authorized by law"); *see Adobe Sys. Inc. v. Coffee Cup Partners, Inc.*, No. C 11-2243 CW, 2012 WL 3877783, at *17 (N.D. Cal. Sept. 6, 2012) (analyzing section 425.16(e)(2) in the context of patent litigation). Actions taken in connection with litigation can include the negotiation and execution of a settlement, although settlement agreements are not necessarily protected. *See Navellier v. Sletten*, 29 Cal. 4th 82, 90, 52 P.3d 703, 709 (2002) (discussing a release of claims in the context of an anti-SLAPP motion); *United Tactical Sys., LLC v. Real Action Paintball, Inc.*, 143 F. Supp. 3d 982, 1001 (N.D. Cal. 2015) (noting that settlement agreements "are not necessarily protected activities" given the California Supreme Court's warning that "a cause of action may be 'triggered' by protected activity without arising from it").[4]

UCP argues that the conduct alleged in the complaint does not arise from protected activity for two reasons. First, it falls under the commercial speech exception to the anti-SLAPP law. Second, while the conduct relates to litigation activity, it does not arise out of that activity.

### A. Whether the Commercial Speech Exception Applies

The California Legislature passed section 425.17 to exempt certain conduct from the anti-SLAPP law in response to its "disturbing abuse." CAL. CIV. PROC. CODE § 425.17(a). A cause of action arising from commercial speech is falls under one such exemption when:

---

[4] UCP does not dispute this point. *See* Oppo. 8 ("In some circumstances settlement-related communications may be protected activities within the meaning of the anti-SLAPP statute.").

> (1) the cause of action is against a person primarily engaged in the business of selling or leasing goods or services; (2) the cause of action arises from a statement or conduct by that person consisting of representations of fact about that person's or a business competitor's business operations, goods, or services; (3) the statement or conduct was made either for the purpose of obtaining approval for, promoting, or securing sales or leases of, or commercial transactions in, the person's goods or services or in the course of delivering the person's goods or services; and (4) the intended audience for the statement or conduct meets the definition set forth in section 425.17(c)(2).

*Simpson Strong-Tie Co. v. Gore*, 49 Cal. 4th 12, 30 (2010) (internal quotation marks and citation omitted); *see* CAL. CIV. PROC. CODE § 425.17(c). The intended audience includes "an actual or potential buyer or customer, or a person likely to repeat the statement to, or otherwise influence, an actual or potential buyer or customer." CAL. CIV. PROC. CODE § 425.17(c)(2). The exemption "should be narrowly construed," and the party claiming the exemption bears the burden of showing that it applies. *Simpson*, 49 Cal. 4th at 22, 26.

UCP asserts that its complaint falls within this exception while Balsam argues that it fails to show three of the four requirements. It is clear that UCP is "a person primarily engaged in the business of selling or leasing goods or services," a fact Balsam does not challenge. *See* Reply 2; *Simpson*, 49 Cal. 4th at 30. UCP further satisfies the intended audience requirement given that Frontgate was a buyer of Balsam's trees and "[i]t is reasonable to believe that the defendant in a lawsuit is an 'intended audience' of the representations made in a complaint." *Girafa.com, Inc. v. Alexa Internet, Inc.*, No. C-08-02745 RMW, 2008 WL 4500858, at *5 (N.D. Cal. Oct. 6, 2008).

As pleaded, the complaint does not meet the other two requirements for this exception. First, UCP has not alleged that its claims arise from representations of fact made by Balsam about UCP products. *See Tuck Beckstoffer Wines LLC v. Ultimate Distributors, Inc.*, 682 F. Supp. 2d 1003, 1012 (N.D. Cal. 2010) (noting that the party seeking to invoke the exception "[did] not refer to a single statement [the other party] made about its own products or a competitor's products"). UCP argues that "[t]he causes of action arise from Balsam's conduct and representations of fact about UCP's invertible trees to Frontgate" and cites to 14 paragraphs of the complaint. Oppo. 4. But none of these paragraphs contains any representations of facts Balsam allegedly made about UCP products. *See* Reply 2–3. Instead, they make references to Balsam's knowledge about

UCP's business relationship with Frontgate, Balsam's settlement discussions with Frontgate, and the patent case between UCP and Balsam. *See* Compl. ¶¶ 19, 21–23, 25, 26, 31, 36, 38–41, 44–45.

Second, UCP's complaint does not clearly plead that Balsam's statements were made for the purpose of promoting sales. Absent pleadings to the contrary, statements made in connection with litigation would seem to be made for litigation-related purposes. *See Girafa.com*, 2008 WL 4500858, at *5 (finding "too attenuated" the assertion that representations made to plead a patent infringement claim were made for the purpose of promoting sales). The complaint does not clearly plead this theory.

In the cases UCP cites, courts have applied the commercial speech exception to protect disputes that are more clearly commercial. *See, e.g.*, *E.D.C. Techs., Inc. v. Seidel*, 225 F. Supp. 3d 1058, 1065–66 (N.D. Cal. 2016) (applying the exception where the emails to customers had "inherently commercial elements" and thus sought to "retain customers, generate business, and secure sales"); *Weiland Sliding Doors & Windows, Inc. v. Panda Windows & Doors, LLC*, 814 F. Supp. 2d 1033, 1038 (S.D. Cal. 2011) (applying the exception where oral statements were made to customers that they could be sued if they purchased competitor products); *United Tactical*, 143 F. Supp. 3d at 1021 (applying the exception where false statements were made on a website about a competitor's product). Without plausible allegations that Balsam made representations about UCP products for the purpose of promoting sales, and given that the exception should be construed narrowly, UCP has not persuaded me that it applies.

### B. Whether the Claims are Independent of Balsam's Litigation Activity

A complaint that implicates protected activity is only a SLAPP if it arises out of that activity. *See Park*, 2 Cal. 5th at 1062. Where the parties have a dispute independent of the movant's prior litigation activity, the court should deny the anti-SLAPP motion. *Id.* at 1063; *see City of Cotati v. Cashman*, 29 Cal. 4th 69, 79–80, 52 P.3d 695, 703 (2002). If "the prior claims [are] an essential part of the activity allegedly giving rise to liability," the court should grant the anti-SLAPP motion. *Park*, 2 Cal. 5th at 1063; *see Navellier v. Sletten*, 29 Cal. 4th 82, 90 (2002) (noting that the claims would have no basis but for the lawsuit and actions taken in connection

with it).

Although the parties do not dispute that litigation and settlement are protected, they dispute whether the conduct at issue falls within the protection of section 425.16. Balsam argues that UCP's claims are based on its initiation and settlement of the litigation against Frontgate, which is protected activity. Mot. 4. UCP counters that its claims "are based on Balsam's decisions and actions—not speech or petitioning activity." Oppo. 9. According to UCP, it "has not pleaded any causes of action against Balsam simply because it settled with Frontgate," and its mention of protected litigation activity does not transform its cause of action into a SLAPP. Oppo. 7–8. It points to language in its complaint alleging that "Balsam removed UCP from the market, not by successfully litigating its claims against Frontgate, but rather by intentionally interfering with UCP's contractual and business relationships." *Id.* at 8; *see* Compl. ¶ 25.

UCP's claims appear inseparable from Balsam's conduct during the *Frontgate* litigation. Balsam asserts that the counts are based not on the *Frontgate* settlement but on "the UCP-Frontgate Partnership Agreement and Balsam's acts of contract-based interference." Oppo. 11. But in its case against Frontgate, Balsam pursued as a remedy the removal of the trees from the market.[5] Reply 6. It sought—and apparently achieved—the same during settlement. *See* Compl. ¶ 23. In other words, Balsam brought claims seeking a certain remedy, and it pursued that remedy through settlement. Framing these actions in terms of interference with contractual relations, interference with economic advantage, and unfair competition cannot divorce them from the protected litigation context.

Instead, all of the alleged conduct that forms the basis of UCP's complaint occurred during the litigation and settlement process. References to the litigation do more than provide "historical context." *See* Oppo. 11. From the face of the complaint it appears the claims would have no basis apart from such conduct. *See Navellier*, 29 Cal. 4th at 90. This close tie shows that Balsam's litigation and settlement with Frontgate are "an essential part of the activity allegedly giving rise to liability." *See Park*, 2 Cal. 5th at 1063. Because Balsam has met its burden on this step, UCP

---

[5] 15-cv-4829 Second Amended Complaint [Dkt. No. 117] Prayer for Relief.

8

1 now has the burden to show that its claims are likely to prevail.

## II. PROBABILITY UCP WILL PREVAIL

As the Ninth Circuit most recently explained, there are two standards under which an anti-SLAPP motion is assessed in federal court. *Planned Parenthood Fed'n of Am., Inc. v. Ctr. for Med. Progress*, 890 F.3d 828, 833 (9th Cir.), *amended,* 897 F.3d 1224 (9th Cir. 2018). First, a defendant can challenge the legal sufficiency of the plaintiff's claims under the standard of Federal Rule of Civil Procedure 12(b)(6). *Id.* Second, a defendant may challenge the factual sufficiency under Rule 56.[6] *Id.*

Balsam challenges only the legal sufficiency of UCP's claims. Mot 1; Reply 10. UCP responds by pointing to the complaint and asserting that it is sufficient to withstand a Rule 12(b)(6) motion. Oppo. 15. Balsam argues that the claims are nonetheless barred because the *Noerr-Pennington* doctrine and the California litigation privilege shield its litigation conduct from forming the basis for tort relief. Mot. 5–9.

California Civil Code section 47 protects communications made in the context of a judicial proceeding. Cal. Civ. Code § 47. "The principal purpose of section 47(2) is to afford litigants and witnesses the utmost freedom of access to the courts without fear of being harassed subsequently by derivative tort actions." *Silberg v. Anderson*, 50 Cal. 3d 205, 213 (1990), *as modified* (Mar. 12, 1990) (internal citation omitted).

Privilege is an affirmative defense. *Beroiz v. Wahl*, 84 Cal. App. 4th 485, 492 (2000). The *Noerr-Pennington* doctrine "shields lobbying and litigation activity" and serves as "immunity from liability, not from trial."[7] *Nunag-Tanedo v. E. Baton Rouge Par. Sch. Bd.*, 711 F.3d 1136, 1140 (9th Cir. 2013). The activity is only shielded as long as it was not a "sham." *City of Columbia v. Omni Outdoor Advert., Inc.*, 499 U.S. 365, 380 (1991) (emphasis in original). "The

---

[6] A factual challenge requires the plaintiff to show that "sufficiently substantial evidence exists to support a judgment" in its favor. *Planned Parenthood*, 890 F.3d at 833.

[7] The doctrine was originally limited to the antitrust context but now applies more broadly. *See Theme Promotions, Inc. v. News Am. Mktg. FSI*, 546 F.3d 991, 1008 (9th Cir. 2008) (intentional interference claims); *Monolithic Power Sys., Inc. v. O2 Micro Int'l Ltd.*, No. C 04-2000 CW, 2007 WL 801886, at *4 (N.D. Cal. Mar. 14, 2007) (UCL claims).

9

'sham' exception to *Noerr* encompasses situations in which persons use the governmental *process*—as opposed to the *outcome* of that process—as an anticompetitive weapon." *Id.* The sham litigation exception does not apply so long as the party "was genuinely seeking governmental action." *Oregon Nat. Res. Council v. Mohla*, 944 F.2d 531, 535 (9th Cir. 1991) (citing *Franchise Realty Interstate Corp. v. San Francisco Local Joint Exec. Bd. of Culinary Workers*, 542 F.2d 1076, 1081 (9th Cir. 1976)).

Specifically, the exception applies if the lawsuit (1) was objectively baseless and (2) was brought with an unlawful motive. *Prof'l Real Estate Inv'rs, Inc. v. Columbia Pictures Indus., Inc.*, 508 U.S. 49, 60 (1993) (hereinafter "*PRE*"); *Sosa v. DIRECTV, Inc.*, 437 F.3d 923, 938 (9th Cir. 2006). Litigation is objectively baseless if "no reasonable litigant could realistically expect success on the merits." *PRE*, 508 U.S. at 60. Litigation is brought with an unlawful motive if it "conceals an attempt to interfere *directly* with the business relationships of a competitor." *Id.* at 60–61 (internal citation omitted). Where claims are based on activities shielded by *Noerr-Pennington* immunity, the plaintiff must plead the sham litigation exception with specificity. *Oregan Nat. Res.*, 944 F.2d at 534–35; *see also Formula One Licensing v. Purple Interactive*, No. C 00-2222 MMC, 2001 WL 34792530, at *2 (N.D. Cal. Feb. 6, 2001) (dismissing claims with leave to amend where the sham pleadings alleged only a "meritless trademark infringement action . . . alleging the infringement of unenforceable, generic marks").

Balsam asserts that the *Noerr-Pennington* doctrine clearly applies from the face of the complaint and that UCP has not pleaded the sham exception with particularity. Mot. 7; Reply 10. Further, Balsam raises my prior determination that its infringement theories were "not so meritless or objectively unreasonable" as to justify attorney fees in the second litigation, and thus there is no way UCP can prove those theories were "objectively baseless" in the *Frontgate* litigation. Mot. 7; *see* Fees Order 11. UCP argues that it does plead sham litigation with sufficient particularity and that evidence and factual development are necessary for me to evaluate *Noerr-Pennington*'s application.

UCP makes allegations about the *Frontgate* litigation in paragraph 40 of the complaint. It reads:

10

> UCP is informed and believes that Balsam threatened Frontgate with protracted litigation and resulting disruption to Frontgate's business although it knew, or should have known, that its patent infringement allegations against UCP's trees were unsupported or false. Balsam knew that it lacked standing to sue Frontgate, and that it could recover no damages from Frontgate. Yet, Balsam insisted that high-level Frontgate executives be deposed and trial be conducted, although Defendants had no reasonable grounds for believing their representations to be true. Defendants created an intolerable nuisance in litigation to convince Frontgate that it was cheaper to settle with Defendants rather than litigation. The Claim Construction Order barred any reasonable claim of infringement, and after the order was issued Balsam's continued litigation was objectively baseless. Balsam's campaign of unfounded conduct was wrongful conduct beyond the interference itself.

Compl. ¶ 40. The next paragraph alleges that Balsam's "actions were designed to disrupt the business relationships between UCP and Frontgate." *Id.* ¶ 41.

As the trial judge in the *Frontgate* litigation and the subsequent declaratory judgment action involving the same patents, I am intimately familiar with the legal positions Balsam took in both. I have sufficient knowledge to assess the legal merit of the predicate suit in this case. *See Boulware v. State of Nev., Dep't of Human Res.*, 960 F.2d 793, 797 (9th Cir. 1992) ("[C]ourts frequently have approached sham claims by attempting to assess the objective legal merit of the predicate suit."). I can and would decide as a matter of law that the litigation was not objectively baseless. *See PRE*, 508 U.S. at 60; Fees Order 13 (concluding that Balsam's defense in the second litigation was not objectively unreasonable or frivolous under 35 U.S.C. section 285). The Supreme Court has explicitly held that the *PRE* sham standard is narrower than the section 285 standard under which I evaluated Balsam's litigation positions in the second case. *See Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 572 U.S. 545, 554–57 (2014) (declining to import the *PRE* standard into section 285 because the risk to the rights *Noerr-Pennington* protects is much greater than the risk of bearing the costs of a lawsuit).

But Balsam challenged only the legal sufficiency of the complaint. Given the nature of the challenge and UCP's representations at the hearing that it can plead additional facts to invoke the commercial speech exception to the anti-SLAPP law, it would not be appropriate to consider a summary-judgment-type challenge at this time.

**CONCLUSION**

For the reasons set forth above, Balsam's motion to strike is DENIED. UCP's complaint is DISMISSED WITH LEAVE TO AMEND.

**IT IS SO ORDERED.**

Dated: May 6, 2019



William H. Orrick
United States District Judge