UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UCP INTERNATIONAL COMPANY LIMITED, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>BALSAM BRANDS INC., et al.,<br><br>Defendants. | Case No. 3:18-cv-07579-WHO<br><br>**ORDER ON MOTION TO STRIKE AND DISMISS**<br><br>Re: Dkt. Nos. 36, 41, 42, 47, 50, 53, 60, 61 |

The parties before me—competitors in the world of high-end artificial Christmas trees—have brought their dispute into federal court for a third time. Plaintiffs UCP International Company Limited and Global United Enterprises Limited (collectively, "UCP") allege that defendants Balsam Brands Inc. and its founder and CEO Thomas Harman (collectively, "Balsam") engaged in wrongful conduct in 2015 and 2016 when pursuing and settling patent infringement claims against UCP's only U.S. supplier. According to UCP, Balsam brought that case knowing it was objectively baseless and induced the supplier to settle on abusive terms, squeezing UCP's trees out of the market in the process. A second lawsuit in 2016 found UCP as a declaratory judgment plaintiff, and at the end of 2018 UCP filed this suit, now alleging that Balsam violated various state and federal laws during the first litigation.

Before me is UCP's first amended complaint and Balsam's special motion to strike the state law claims and to dismiss the federal claims. As set forth below, I conclude that state and federal litigation privileges shield Balsam's conduct from giving rise to liability. Accordingly, I will grant the motion to strike in part and dismiss the remaining claims.

**BACKGROUND**

In October 2015, Balsam filed a complaint against Frontgate asserting claims for patent

infringement, false marketing and advertising, and violations of California's unfair competition and false advertising laws. 15-cv-4829 Complaint ("*Frontgate* Compl.") [15-cv-4829[1] Dkt. No. 1]. I denied Balsam's motion for a temporary restraining order, and in September 2016 I issued a claim construction order. *See* Order Denying Motion for TRO [15-cv-4829 Dkt. No. 42]; Claim Construction Order [15-cv-4829 Dkt. No. 108]. In December 2016, I issued an order dismissing the case with prejudice in response to the parties' stipulation requesting the same. Order of Dismissal [15-cv-4829 Dkt. No. 155].

The day after the parties stipulated to dismissal of the *Frontgate* litigation, UCP filed a complaint against Balsam seeking a declaratory judgment of non-infringement. Second Complaint [16-cv-7255 Dkt. No. 7[2]]. After a brief stint before a different judge on this court,[3] the case returned to me and I granted summary judgment in favor of UCP. Order Granting Motion for Summary Judgment [16-cv-7255 Dkt. No. 118]. UCP then moved for attorney fees, seeking to collect not only for the second litigation but also for the *Frontgate* litigation. I concluded that UCP was not entitled to fees for the *Frontgate* litigation, to which it was not a party. Order Granting in Part and Denying in Part Motion for Fees ("Fees Order") [16-cv-7255 Dkt. No. 146] 7–11. I granted the motion for some aspects of Balsam's conduct during the second litigation but denied the request under 35 U.S.C. section 285 because "Balsam's litigation positions were not so meritless or objectively unreasonable to justify a finding of exceptionality under Section 285." *Id.* at 12.

UCP filed the instant action on December 17, 2018, and I found that it was related to the prior cases and should be reassigned to me. *See* Complaint ("Compl.") [Dkt. No. 1]; Related Case Order [Dkt. No. 16]. Balsam then filed its first anti-SLAPP motion to strike. After hearing my

---

[1] Where a different case number is not specified, this Order refers to docket entries in the instant action.

[2] Docket number 7 replaced the document that was incorrectly filed at docket number 1.

[3] I recused myself after Balsam hired my old firm and former partner; the case was reassigned to the Honorable William Alsup; he disqualified my old firm and the case was related back to me. *See* 16-cv-7255 Dkt. Nos. 71, 72, 74, 105, 106, 110, 113.

tentative opinion that the commercial speech exemption to the anti-SLAPP law did not apply, UCP urged that I deny the motion and allow it the opportunity to amend to show that the dispute fell within that exemption. Although it seemed the *Noerr-Pennington* doctrine would protect Balsam's conduct in any event, Balsam had not filed a separate motion to dismiss. On May 6, 2019 I denied Balsam's motion but exercised my discretion to dismiss the complaint with leave to amend. Order Dismissing Complaint [Dkt. No. 31].

On May 28, 2019, UCP filed a first amended complaint including new allegations that, according to UCP, show this dispute falls within the commercial speech exemption to the anti-SLAPP law. First Amended Complaint ("FAC") [Dkt. No. 37]. UCP alleges that Balsam made three distinct statements about UCP trees "to promote sales of its 'Flip Tree' and to convince potential customers not to do business with UCP or to buy UCP's trees." FAC ¶ 23. First, Balsam posted on its website an open letter from Harman to potential customers. FAC ¶ 20, Ex. C ("Harman Letter") [Dkt. No. 36-9]. The letter falsely claimed Balsam had patents to a "rotating Christmas tree with collapsible limbs" and called the trees sold by Frontgate an "obvious imitation." *Id.* Balsam "urg[ed] customers to take into consideration UCP's purported unfair practices and knock-off Chinese product to convince potential customers to 'purchase [their tree] from Balsam Hill.'" *Id.* Second, on October 20, 2016, Balsam posted a YouTube video that displayed a UCP tree and "falsely claimed that 'some of [Balsam's] competitors [were] selling imitations that cop[ied] the most central elements of our trees." *Id.* ¶ 21. Third, Balsam operated the website http://fliptrees.com, which claimed that "'[t]here [was] a battle occurring in the world of artificial Christmas trees, between a patented original and a bad imitation.'" *Id.* ¶ 22.

UCP's amended complaint raises several new reasons why the *Frontgate* litigation was objectively baseless in response to my Order in an attempt to invoke the sham litigation exception to the *Noerr-Pennington* doctrine. First, "[N]o reasonable litigant could have realistically expected that Balsam would succeed on the merits" or believed that UCP's trees infringed. FAC ¶¶ 27, 32. Second, Balsam lacked standing to sue. *Id.* ¶ 28. Third, Balsam engaged in inequitable conduct by asserting the patents despite knowing that individuals involved in their prosecution "failed to supply material information and or supplied false information with intent to deceive the

3

1  [United States Patent and Trademark Office] to issue Certificates of Correction for the patents-in-
2  suit." *Id.* ¶ 29. Fourth, the asserted claims were invalid for violating the on-sale bar. *Id.* ¶ 30.
3  Finally, Balsam pursued past infringement damages from Frontgate despite knowing it was not
4  entitled to them. *Id.* ¶ 31.

Balsam then moved to strike and dismiss the first amended complaint, and I heard argument on the motion on August 21, 2019. Motion to Strike and Dismiss ("Mot.") [Dkt. No. 42]. Then, on September 19, 2019, the Federal Circuit decided cross-appeals the parties had filed in the second round of their dispute.[4] The panel reversed my order granting summary judgment in favor of UCP and remanded the case.

## LEGAL STANDARD

### I. ANTI-SLAPP MOTION TO STRIKE

California Code of Civil Procedure section 425.16 is California's response to "strategic lawsuits against public participation," or SLAPP lawsuits. It was enacted "to provide a procedure for expeditiously resolving nonmeritorious litigation meant to chill the valid exercise of the constitutional rights of freedom of speech and petition in connection with a public issue." *Hansen v. California Dep't of Corr. & Rehab.*, 171 Cal. App. 4th 1537, 1542-43 (2008). It provides that a cause of action against a person "arising from any act of that person in furtherance of the person's right of petition or free speech under the United States Constitution or the California Constitution in connection with a public issue shall be subject to a special motion to strike, unless the court determines that the plaintiff has established that there is a probability that the plaintiff will prevail on the claim." CAL. CIV. PROC. CODE § 425.16(b)(1). An "act in furtherance of the person's right of petition or free speech under the United States Constitution or the California Constitution in connection with a public issue" includes:

> (1) any written or oral statement or writing made before a legislative, executive, or judicial proceeding, or any other official proceeding authorized by law,
>
> (2) any written or oral statement or writing made in connection with an issue under

---

[4] Balsam moved to file a proposed supplemental brief, which UCP opposed. Dkt. Nos. 60, 63. I agree with UCP that only notice was appropriate. The parties' respective requests are DENIED.

> consideration or review by a legislative, executive, or judicial body, or any other official proceeding authorized by law,
>
> (3) any written or oral statement or writing made in a place open to the public or a public forum in connection with an issue of public interest, or
>
> (4) any other conduct in furtherance of the exercise of the constitutional right of petition or the constitutional right of free speech in connection with a public issue or an issue of public interest.

CAL. CIV. PROC. CODE § 425.16(e).

"When served with a SLAPP suit, the defendant may immediately move to strike the complaint under Section 425.16." *Hansen*, 171 Cal. App. 4th at 1543. That motion is known as an anti-SLAPP motion. To determine whether an anti-SLAPP motion should be granted, the trial court must engage in a two-step process. "First, the defendant must make a prima facie showing that the plaintiff's suit arises from an act in furtherance of the defendant's rights of petition or free speech." *Mindys Cosmetics, Inc. v. Dakar*, 611 F.3d 590, 595 (9th Cir. 2010) (citation and internal quotation marks omitted). "Second, once the defendant has made a prima facie showing, the burden shifts to the plaintiff to demonstrate a probability of prevailing on the challenged claims." *Id.* "[T]he anti-SLAPP statute cannot be used to strike federal causes of action." *Hilton v. Hallmark Cards*, 599 F.3d 894, 901 (9th Cir. 2010).

## II.     MOTION TO DISMISS

Under Federal Rule of Civil Procedure 12(b)(6), a district court must dismiss a complaint if it fails to state a claim upon which relief can be granted. FED. R. CIV. P. 12(b)(6). To survive a 12(b)(6) motion, the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007). A claim is facially plausible when the plaintiff pleads facts that "allow the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). There must be "more than a sheer possibility that a defendant has acted unlawfully." *Id.* While courts do not require "heightened fact pleading of specifics," a plaintiff must allege facts sufficient to "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555, 570.

In deciding whether the plaintiff has stated a claim upon which relief can be granted, the court accepts the plaintiff's allegations as true and draws all reasonable inferences in favor of the plaintiff. *Usher v. City of Los Angeles*, 828 F.2d 556, 561 (9th Cir. 1987). However, the court is not required to accept as true "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008). If the court dismisses the complaint, it "should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000).

## DISCUSSION

Balsam moves to strike UCP's state claims and moves to dismiss its federal claims. UCP argues that its complaint falls within the commercial speech exemption to the anti-SLAPP law and the sham litigation exception to *Noerr-Pennington*'s protection.

### I. MOTION TO STRIKE

Balsam argues that UCP's first amended complaint continues to reflect that its claims arise from Balsam's protected litigation activity. UCP counters that Balsam's motion fails at step one and that even if I reach the second step of the inquiry, it can show a probability of success on the merits of its claims.

#### A. Arising from Protected Activity

UCP sets forth two reasons why Balsam's anti-SLAPP motion fails at step one. First, the commercial speech exemption applies. Second, the claims do not *arise from* protected activity because the complaint's references to the *Frontgate* litigation merely supply context.

"A claim arises from protected activity when that activity underlies or forms the basis for the claim." *Park v. Bd. of Trustees of California State Univ.*, 2 Cal. 5th 1057, 1062 (2017). The movant cannot meet its burden by merely showing that an action was filed after protected activity took place, even if the protected activity might have triggered the action. *Navellier v. Sletten*, 29 Cal. 4th 82, 89 (2002). Instead, the arising from requirement is satisfied when "*the defendant's conduct by which plaintiff claims to have been injured* falls within one of the four categories described in subdivision (e)." *Park*, 2 Cal. 5th at 1063 (emphasis in original) (internal quotation

marks and citation omitted); *see also id.* at 1062 ("Critically, 'the defendant's act underlying the plaintiff's cause of action must *itself* have been an act in furtherance of the right of petition or free speech.'").

Statements made in connection with civil litigation are protected. Cal. Civ. Proc. Code § 425.16(e)(2) (covering "any written or oral statement or writing made in connection with an issue under consideration or review by a legislative, executive, or judicial body, or any other official proceeding authorized by law"); *see Adobe Sys. Inc. v. Coffee Cup Partners, Inc.*, No. C 11-2243 CW, 2012 WL 3877783, at *17 (N.D. Cal. Sept. 6, 2012) (analyzing section 425.16(e)(2) in the context of patent litigation). Protected actions taken in connection with litigation can include the negotiation and execution of a settlement, although settlement agreements are not necessarily protected. *See Navellier v. Sletten*, 29 Cal. 4th 82, 90, 52 P.3d 703, 709 (2002) (discussing a release of claims in the context of an anti-SLAPP motion); *United Tactical Sys., LLC v. Real Action Paintball, Inc.*, 143 F. Supp. 3d 982, 1001 (N.D. Cal. 2015) (noting that settlement agreements "are not necessarily protected activities" given the California Supreme Court's warning that "a cause of action may be 'triggered' by protected activity without arising from it").

### 1. The Commercial Speech Exemption

In my prior Order dismissing UCP's initial complaint, I found that UCP failed to allege that Balsam made representations of fact about its own products or UCP's products or that the representations were made for the purpose of promoting sales. Order Dismissing Complaint 6–7. UCP asserts that the amended complaint cures these deficiencies. Oppo. 2–5.

The California Legislature passed section 425.17 to exempt certain conduct from the anti-SLAPP law in response to its "disturbing abuse." Cal. Civ. Proc. Code § 425.17(a). A cause of action arising from commercial speech falls under one such exemption when:

> (1) the cause of action is against a person primarily engaged in the business of selling or leasing goods or services; (2) the cause of action arises from a statement or conduct by that person consisting of representations of fact about that person's or a business competitor's business operations, goods, or services; (3) the statement or conduct was made either for the purpose of obtaining approval for, promoting, or securing sales or leases of, or commercial transactions in, the person's goods or services or in the course of delivering the person's goods or services; and (4) the intended audience for the statement or conduct meets the definition set forth in section 425.17(c)(2).

7

*Simpson Strong-Tie Co. v. Gore*, 49 Cal. 4th 12, 30 (2010) (internal quotation marks and citation omitted); *see* Cal. Civ. Proc. Code § 425.17(c). The intended audience includes "an actual or potential buyer or customer, or a person likely to repeat the statement to, or otherwise influence, an actual or potential buyer or customer." Cal. Civ. Proc. Code § 425.17(c)(2). The exemption "should be narrowly construed," and the party claiming the exemption bears the burden of showing that it applies. *Simpson*, 49 Cal. 4th at 22, 26.

In *JAMS*, a California court of appeal concluded that a plaintiff's causes of action arose from statements that "fit comfortably within the commercial speech exemption." *JAMS, Inc. v. Superior Court*, 1 Cal. App. 5th 984, 995 (2016). The plaintiff alleged that he relied on inaccurate qualifications listed on the JAMS website when he decided to hire a retired judge for Alternative Dispute Resolution services. *Id.* at 989–90. He sought to pursue claims under California's Consumers Legal Remedies Act, Unfair Competition Law, and False Advertising Law, along with claims for fraud and negligent misrepresentation, based on the website's misleading descriptions of the judge's business achievements and failure to disclose unflattering information. *Id.* Faced with the defendants' anti-SLAPP motion, the court concluded that the commercial speech exemption applied because the causes of action arose from representations of fact that were intended to be relied upon by consumers of JAMS's services. *Id.* at 995–96.

UCP's amended complaint alleges actions by Balsam that could give rise to claims that fit within the commercial speech exemption. First, Balsam is primarily engaged in the business of selling goods.[5] Second, the complaint alleges that Balsam made representations of fact about its trees and UCP's on its website and on YouTube, namely by calling UCP trees "bad imitations" and "copies" and contrasting Balsam's trees as "the real deal." FAC ¶¶ 20–22.[6] Third, it is

---

[5] My prior Order mistakenly identified UCP as the party engaged in the business of selling goods; it is Balsam's rather than UCP's status that is relevant to the commercial speech analysis. *See* Order Dismissing Complaint 6.

[6] Balsam requests judicial notice of various documents, including Harman's August 2016 letter, and UCP objects on the ground that the complaint should be assessed as pleaded. *See* Request for Judicial Notice [Dkt. No. 43]; Oppo. 8-9. Given that several of the materials are already part of the record in this case—including as attachments to UCP's first amended complaint—I did not need to rely additional documents to resolve the pending motions. Accordingly, the requests are DENIED AS MOOT. For this reason, Balsam's motion to seal Exhibit 3 to its request—the

reasonable to infer that the statements—namely, "If you are considering purchasing a Flip Tree, I hope you will purchase it from Balsam Hill"—were intended to promote sales.[7] Harman Letter 2; *see* FAC ¶¶ 22–23; *Weiland Sliding Doors & Windows, Inc. v. Panda Windows & Doors, LLC*, 814 F. Supp. 2d 1033, 1039 (S.D. Cal. 2011) (finding it reasonable to infer that statements telling customers they could be sued if they purchased competitor's products were for the "purpose of driving sales away from [the competitor] and toward [the speaker]"). Finally, the letter and video were directed to actual and potential purchasers of artificial Christmas trees. *See* Harman Letter 1 (addressing letter "To Our Balsam Hill Customers"); FAC ¶¶ 20–23.

But only one of UCP's state law claims—the sixth cause of action for false advertising—actually rests on Balsam's online statements. *See* FAC ¶¶ 97–99. By contrast, its second, third, and fourth causes of action face an insurmountable hurdle: they do not involve allegations related to the exempt statements. Instead, as discussed in more detail below, they are based on the very fact that Balsam filed and pursued the *Frontgate* litigation. *See Sonoma Foods*, 634 F. Supp. 2d at 1017 (noting that the movant meets its burden by showing "the actual acts underlying each claim at issue were acts taken [by the movant] in furtherance of the right of petition or free speech"). It was through litigation and settlement activities, not online statements, that Balsam allegedly interfered with UCP's contractual relations. *See* FAC ¶ 65. It was through litigation and settlement activities, not online statements, that Balsam allegedly interfered with UCP's prospective economic advantage. *See* FAC ¶¶ 74, 77; *see also Weiland*, 814 F. Supp. 2d at 1038–39 (finding that interference claims could proceed where they were based on a competitor telling customers they could be sued if they purchased the other party's products). It was through these activities, not online statements, that Balsam allegedly engaged in unfair competition. *See* FAC ¶¶ 80–82.

UCP argues that California courts have "expansively appl[ied] the commercial speech

---

settlement agreement with Frontgate—is TERMINATED AS MOOT. *See* Dkt. No. 41.

[7] Balsam argues that they were "made for the purpose of explaining why Balsam brought a lawsuit against Frontgate for patent infringement." Reply 5. That was one stated purpose of the letter, but given that it also made a plug for Balsam's trees as the "real deal," UCP plausibly asserts that promoting sales was a second purpose.

9

exemption" in recent cases. Oppo. 5–6. But in the cases it cites, the causes of action in fact arose from the statements that fell within the exemption. *See JAMS*, 1 Cal. App. 5th at 996; *Demetriades v. Yelp, Inc.*, 228 Cal. App. 4th 294, 310 (2014) (allowing claims for unfair competition and false advertising to proceed based on Yelp's allegedly inaccurate statements that were intended to attract users and advertisers). Because the second, third, and fourth causes of action rely on allegations that bring them within the scope of the exemption, I will proceed with the anti-SLAPP inquiry and address whether they arise from protected activity.

### 2. Whether the Claims are Independent of Balsam's Litigation Activity

UCP asserts that the first amended complaint "pleads non-Frontgate facts sufficient for viable state claims, including valid partnership contracts between UCP and Frontgate, Balsam's knowledge of the contracts and business arrangement, Balsam's acts aimed at disrupting the contracts, an actual breach, and resulting damage." Oppo. 12 (citing FAC ¶¶ 10–19, 23). UCP heavily leans on *United Tactical*, a case in which Magistrate Judge James in this district denied a motion to strike a Cartwright Act claim that "[was] not *based on* protected activities." *See United Tactical*, 143 F. Supp. 3d at 1020 (emphasis in original). That case involved competitors that sold non-lethal irritant-filled projectiles. *Id.* at 994. The plaintiff[8] had previously filed a complaint against the defendant and third parties alleging trademark infringement and other violations. *Id.* The plaintiff settled with the third parties on terms the defendant alleged were abusive. *Id.* Before Judge James were several motions, among them the plaintiff's special motion to strike the defendant's counterclaims under California's anti-SLAPP law. *Id.* at 995–96.

As relevant for the instant case, Judge James concluded that the intentional and negligent interference with contractual relations counterclaims arose out of protected activity because they "rel[ied], at least in part, on the filing of [the litigation]." *Id.* at 1010, 1020. By contrast, the Cartwright counterclaim was based only on the agreements the plaintiff had reached with third parties in the related litigation. *Id.* at 1020. While those agreements did resolve the legal dispute between those parties, the plaintiff had alleged that they "also went further, establishing an

---

[8] For simplicity's sake, I will refer to the plaintiff and its predecessor in interest as one.

10

agreement to restrain trade in the process." *Id.* Judge James found that the agreements were no more than collateral to protected activities and denied the motion to strike. *Id.*

Where a party's claims amount to a challenge to the relief sought in a complaint, those claims arise from protected activity. *See Sonoma Foods, Inc. v. Sonoma Cheese Factory*, 634 F. Supp. 2d 1009, 1017 (N.D. Cal. 2007) (White, J.) ("Counter-claimants are challenging the relief Sonoma Foods is seeking in its infringement complaint. The tenth and eleventh counter-claims thus 'arise from' protected activity."). Here, Balsam's complaint sought to enjoin Frontgate from selling UCP's allegedly infringing trees, and it achieved precisely that relief in the settlement. There is certainly protected activity at issue. The second, third, and fourth claims are "mixed" causes of action because they include allegations of protected activity and allegations of allegedly unprotected activity. While UCP alleges that Balsam acted with an improper purpose,[9] that assertion cannot transform its efforts to enforce its patents against an alleged infringer into something other than petitioning activity. When it comes to the second, third, and fourth claims, these allegations of protected activity "'supply elements of the challenged claim[s].'" *See Rand Res., LLC v. City of Carson*, 6 Cal. 5th 610, 621 (2019).

There are also allegations that do not necessarily arise from protected activity, namely UCP's assertion that Balsam's settlement with Frontgate went beyond resolving the dispute to include terms that would prevent Frontgate from selling even non-infringing trees. UCP alleges that these "abusive terms" show that the agreement as a whole was collateral to the petitioning activity. *See United Tactical*, 143 F. Supp. 3d at 1020.[10] But where causes of action are mixed, "[i]f the court determines that relief is sought based on allegations arising from activity protected by the statute, the second step is reached." *Baral*, 1 Cal. 5th at 396. Accordingly, I will assess

---

[9] At one point UCP argues that its claims rest not on communications, which are protected, but instead on Balsam's conduct and state of mind. Oppo. 7 (citing *Graham-Sult v. Clainos*, 756 F.3d 724, 737 (9th Cir. 2014)). Filing, litigating, and then settling a lawsuit certainly involve communications; this argument is unpersuasive.

[10] *United Tactical* was decided prior to *Baral*, in which the California Supreme Court found that "mixed" causes of action could still be subject to a special motion to strike if "claims for relief that are based on allegations of protected activity . . . lack any merit." *Baral v. Schnitt*, 1 Cal. 5th 376, 396 (2016).

11

1   UCP's probability of success on the merits.

2   **B.      Probability of Success on the Merits**

3   At step two of the SLAPP inquiry, the burden shifts to UCP to show a probability of

4   success on the challenged claims. Balsam asserts that UCP cannot show a probability of success

5   because the California litigation privilege and *Noerr-Pennington* doctrine shield its activity from

6   forming the basis of a legal action against it.

**1.    California Litigation Privilege**

Balsam argues that the California litigation privilege bars the state law claims. California Civil Code section 47 protects communications made in the context of a judicial proceeding. Cal. Civ. Code § 47. According to the California Supreme Court,

> The usual formulation is that the privilege applies to any communication (1) made in judicial or quasi-judicial proceedings; (2) by litigants or other participants authorized by law; (3) to achieve the objects of the litigation; and (4) that have some connection or logical relation to the action.

*Silberg v. Anderson*, 50 Cal. 3d 205, 212 (1990), *as modified* (Mar. 12, 1990). The third prong requires that the communication be "in furtherance of the objects of the litigation," although this test does not probe the "motives, morals, ethics or intent of the person claiming the privilege." *Rothman v. Jackson*, 49 Cal. App. 4th 1134, 1141 (1996). "The principal purpose of section 47(2) is to afford litigants and witnesses the utmost freedom of access to the courts without fear of being harassed subsequently by derivative tort actions." *Silberg*, 50 Cal. 3d at 213 (internal citation omitted).

UCP argues that its claims are based on "non-communicative wrongful acts" rather than privileged communications. Oppo. 18. "A threshold issue in determining if the litigation privilege applies is whether the alleged injury arises from a communicative act or noncommunicative conduct." *Action Apartment Assn., Inc. v. City of Santa Monica*, 41 Cal. 4th 1232, 1248 (2007). "We contemplate no communication that is more clearly protected by the litigation privilege than the filing of a legal action." *Id.* at 1249. But the settlement that UCP alleges went too far—although certainly tied to the underlying case—is arguably noncommunicative conduct. Accordingly, the California litigation privilege does not bar the

second, third, or fourth causes of action insofar as they are based on the settlement itself.

### 2. *Noerr-Pennington*

The *Noerr-Pennington* doctrine "shields lobbying and litigation activity" and serves as "immunity from liability, not from trial."[11] *Nunag-Tanedo v. E. Baton Rouge Par. Sch. Bd.*, 711 F.3d 1136, 1140 (9th Cir. 2013); *see also Theme Promotions, Inc. v. News Am. Mktg. FSI*, 546 F.3d 991, 1007 (9th Cir. 2008) (noting that "conduct incidental to a lawsuit" is also protected). The activity is shielded as long as it was not a "sham." *City of Columbia v. Omni Outdoor Advert., Inc.*, 499 U.S. 365, 380 (1991) (emphasis in original). "The 'sham' exception to *Noerr-Pennington* encompasses situations in which persons use the governmental *process*—as opposed to the *outcome* of that process—as an anticompetitive weapon." *Id.* The sham litigation exception does not apply so long as the party "was genuinely seeking governmental action." *Oregon Nat. Res. Council v. Mohla*, 944 F.2d 531, 535 (9th Cir. 1991) (citing *Franchise Realty Interstate Corp. v. San Francisco Local Joint Exec. Bd. of Culinary Workers*, 542 F.2d 1076, 1081 (9th Cir. 1976)).

> The sham litigation exception applies:
> [F]irst, where the lawsuit is objectively baseless and the defendant's motive in bringing it was unlawful; second, where the conduct involves a series of lawsuits brought pursuant to a policy of starting legal proceedings without regard to the merits and for an unlawful purpose; and third, if the allegedly unlawful conduct consists of making intentional misrepresentations to the court, litigation can be deemed a sham if a party's knowing fraud upon, or its intentional misrepresentations to, the court deprive the litigation of its legitimacy.

*Sosa v. DIRECTV, Inc.*, 437 F.3d 923, 938 (9th Cir. 2006) (internal quotation marks and citations omitted). Litigation is objectively baseless if "no reasonable litigant could realistically expect success on the merits." *Prof'l Real Estate Inv'rs, Inc. v. Columbia Pictures Indus., Inc.*, 508 U.S. 49, 60 (1993) (hereinafter "*PRE*"). Litigation is brought with an unlawful motive if it "conceals an attempt to interfere *directly* with the business relationships of a competitor." *Id.* at 60–61 (internal citation omitted). In allegedly sham patent infringement actions, "the fraud or

---

[11] The doctrine was originally limited to the antitrust context but now applies more broadly. *See Theme Promotions, Inc. v. News Am. Mktg. FSI*, 546 F.3d 991, 1008 (9th Cir. 2008) (intentional interference claims); *Monolithic Power Sys., Inc. v. O2 Micro Int'l Ltd.*, No. C 04-2000 CW, 2007 WL 801886, at *4 (N.D. Cal. Mar. 14, 2007) (UCL claims).

13

1  misrepresentation may have been directed to the federal Patent and Trademark Office ('PTO'), not
2  merely to a court." *Kaiser Found. Health Plan, Inc. v. Abbott Labs., Inc.*, 552 F.3d 1033, 1045
3  (9th Cir. 2009). *Walker Process* fraud, which is not shielded, occurs when "an entity that obtains
4  a patent fraudulently and then uses that patent to exclude a competitor from the market through
5  infringement suits." *Id.*

Where claims are based on activities shielded by *Noerr-Pennington* immunity, the plaintiff must plead the sham litigation exception with specificity. *Oregan Nat. Res.*, 944 F.2d at 534–35; *see also Formula One Licensing v. Purple Interactive*, No. C 00-2222 MMC, 2001 WL 34792530, at *2 (N.D. Cal. Feb. 6, 2001) (dismissing claims with leave to amend where the sham pleadings alleged only a "meritless trademark infringement action . . . alleging the infringement of unenforceable, generic marks"). Courts can assess the sham litigation exception at the motion to dismiss stage where past proceedings or judicially noticeable facts make it clear that the sham litigation exception does not apply. *See Fitbit, Inc. v. Laguna 2, LLC*, No. 17-CV-00079-EMC, 2018 WL 306724, at *10 (N.D. Cal. Jan. 5, 2018) (noting that the court's analysis of prior motions showed the acts were not objectively baseless); *Nazir v. United Air Lines, No.* CV 09-01819 CRB, 2009 WL 2912518, at *5 (N.D. Cal. Sept. 9, 2009) (concluding based on judicially noticeable evidence that the conduct was not a sham and declining to reach subjective intent).

UCP first argues that discovery will allow it to prove that Balsam's petitioning "does not immunize" its actions because "[t]he acts complained of were unrelated to petitioning activity."[12] Oppo. 14. I cannot agree. The harm UCP allegedly suffered resulted from statements incidental to the litigation and from terms to which Balsam and Frontgate agreed as part of a settlement to resolve the litigation between them. In one case UCP cites, Judge Illston denied a motion to dismiss on *Noerr-Pennington* grounds because there was evidence that the actions giving rise to the claims occurred *after* the execution of the settlement agreement, meaning those actions could not have served to induce entry into that agreement. *Select Portfolio Servicing v. Valentino*, 875

---

[12] Namely, "in the absence of attorneys defendant Harman had 'business-to-business' discussions with Frontgate that covered topics other than just settlement; and Balsam and Frontgate reached terms that exceeded the scope of the Frontgate infringement case." Oppo. 14.

14

F. Supp. 2d 975, 985 (N.D. Cal. 2012). There is no such temporal distinction here; instead, the execution of the settlement agreement itself—and the terms therein—caused the harm UCP allegedly suffered.

In another case UCP cites, a court declined to apply the *Noerr-Pennington* doctrine to a settlement agreement wherein one party agreed to boycott a non-party's tires. *Toyo Tire & Rubber Co. v. Atturo Tire Corp.*, 2017 WL 1178224, at *6 (N.D. Ill. Mar. 30, 2017). Key to the court's reasoning was the fact that the complaint "[did] not even mention [the non-party] or [non-party] tires" and the record included no suggestion that the tires were part of a prior investigation that had been requested. *Id.* The facts before me stand in sharp relief; UCP complains of settlement provisions that achieved precisely the relief Balsam sought in its complaint against Frontgate. Even after an opportunity to amend, UCP's complaint remains rooted in the *Frontgate* litigation.

UCP next asserts that it has plausibly pleaded that the *Frontgate* litigation was a sham because it was objectively baseless in several respects: (i) Balsam lacked standing to sue Frontgate, (ii) Balsam knew the patentee engaged in inequitable conduct before the PTO, (iii) the asserted claims were invalid for violating the on-sale bar, (iv) Balsam sought past infringement damages from Frontgate but was not entitled to such damages, and (v) no reasonable litigant could have believed UCP's trees infringed the asserted patents.[13] UCP further asserts that it would be premature for me to decide this question before the parties have engaged in discovery and without a jury to resolve factual disputes. Oppo. 16–18.

The *Frontgate* litigation was not a sham. Contrary to UCP's arguments, deciding this question does not require me to delve into each of the ways Balsam's positions were vulnerable to attack. Weaknesses in Balsam's case would not make it objectively baseless. This determination does not come down to the merits; it comes down to whether a reasonable litigant "could realistically expect success on the merits." *See PRE*, 508 U.S. at 60. After reading dozens of

---

[13] UCP does not set forth a separate theory of *Walker Process* fraud; instead, its arguments relating to conduct before the PTO are theories of objective baselessness. *See* FAC ¶¶ 29-30. It appears a *Walker Process* fraud argument is not available because Balsam itself did not prosecute the patents at issue.

15

filings, deciding numerous motions, and overseeing various proceedings in the three cases involving these issues, I know that it was not unreasonable for Balsam to believe it could succeed on the merits of its claims against Frontgate. This conclusion remains the same despite the new allegations in the amended complaint,[14] and UCP will not be able to develop facts sufficient to prove otherwise—even if it could rely on those facts to show that its trees do not infringe. The Federal Circuit's recent decision only underscores the conclusion that Balsam's patent infringement case was not objectively baseless and that there is sufficient information available to make that determination now. Because UCP fails to show objective baselessness, I need not address Balsam's allegedly improper motives. *See White v. Lee*, 227 F.3d 1214, 1232 (9th Cir. 2000) ("Because, in the present case, the first requirement cannot be sustained, we need not even consider the second.").

UCP's second, third, and fourth claims rest on allegations protected by the *Noerr-Pennington* doctrine. Accordingly, Balsam's motion to strike is GRANTED IN PART as to these causes of action.

### C. The False Advertising Claim

If Balsam intended to move to dismiss the state law claims in the alternative to its special motion to strike, it did not do so clearly. There are only two references to a request that I dismiss the state law claims. *See* Mot. 1 ("For the reasons set forth in detail below, the Court should strike and dismiss UCP's state law claims, dismiss UCP's federal claims, deny UCP leave to amend, and award Balsam its attorney's fees incurred in challenging the state law claims."), ECF p.2 (similar). In the exercise of my discretion and in the interest of streamlining this case toward its inevitable end, I will consider whether the state and federal litigation privileges apply and bar the sixth cause of action.

The California litigation privilege can apply to out-of-court statements "to non-parties who have a "substantial interest in the outcome of the pending litigation." *Castaline v. Aaron Mueller*

---

[14] UCP newly contends that Balsam committed inequitable conduct by asserting infringement despite knowing that those (unnamed persons) who prosecuted the patent committed fraud in front of the PTO. FAC ¶ 29. In addition, the inventor violated the on-sale bar. *Id.* ¶ 30.

16

*Arts*, No. C 09-02543 CRB, 2010 WL 583944, at *4 (N.D. Cal. Feb. 16, 2010) (internal quotation marks omitted); *see also Action Apartment Assn., Inc. v. City of Santa Monica*, 41 Cal. 4th 1232, 1241 (2007) ("The privilege 'is not limited to statements made during a trial or other proceedings, but may extend to steps taken prior thereto, or afterwards.'"). I conclude that the privilege shields Balsam from liability based on the statements it made about the parties' products. Customers have a substantial interest in the outcome of litigation over whether one competitor's products infringe on another's. *See Weiland Sliding Doors & Windows, Inc. v. Panda Windows & Doors, LLC*, 814 F. Supp. 2d 1033, 1041 (S.D. Cal. 2011) (concluding a press release was covered because the audience of customers and vendors had a substantial interest in whether they or the plaintiff would be potentially subject to liability for infringement); *see also eCash Techs., Inc. v. Guagliardo*, 210 F. Supp. 2d 1138, 1152 (C.D. Cal. 2001) ("[A] communication merely informing a third party of the *pendency* of this litigation must clearly fall within the privilege.") (noting further that there was nothing "'false or misleading' about the contents of the letter").

UCP's cases are readily distinguishable. In one, a court declined to find that statements were privileged where they were made about contemplated litigation on a website with over 47,000 unique visitors. *See Monex Deposit Co. v. Gilliam*, 680 F. Supp. 2d 1148, 1158, 1164 (C.D. Cal. 2010). The website—MonexFraud.com—was created to build a class action case against a company, and yet no litigation was ever filed. *See id.* Here, by contrast with a website including unsupported statements directed to a generalized audience, customers of flip trees were the intended audience for the various statements at issue that explained pending litigation, why Balsam decided to initiate it, and Balsam's position on infringement.[15]

I also conclude that the *Noerr-Pennington* doctrine bars the claims insofar as they are based on the online statements. *See Sosa*, 437 F.3d at 931–32 ("In determining whether the

---

[15] UCP argues that Harman's statements gave his view of the dispute and did "not further the litigation *itself.*" Oppo. 19-20. UCP's formulaic recitation of the requirements is not persuasive. It is clear from the cases cited here that privilege can apply to statements made to customers about litigation where those customers have a substantial interest in the outcome. By contrast with the instant case, all of the cases UCP relies on involved statements to nonparties "unconnected to the proceedings." *See id.* (citing two cases with parentheticals quoting that language).

17

burdened conduct falls under the protection of the Petition Clause, we must give adequate 'breathing space' to the right of petition."). "[C]ommunications between private parties are sufficiently within the protection of the Petition Clause to trigger the *Noerr–Pennington* doctrine, so long as they are sufficiently related to petitioning activity." *Sosa*, 437 F.3d at 935. Where companies notify customers about a lawsuit and their intent to pursue legal rights, those communications are protected. *See Sliding Door Co. v. KLS Doors, LLC*, 2013 WL 2090298, at *6 (C.D. Cal. May 1, 2013) (finding an email protected where it notified "purchasers or potential purchasers" of the suit and the company's intent to pursue its rights as to purchasers of the allegedly infringing product); *AirHawk Int'l, LLC v. TheRealCraigJ, LLC*, 2017 WL 3891214, at *3 (C.D. Cal. Jan. 19, 2017) (finding similar communications protected, along with an article "focused on" the suit).

Here, it is clear that Balsam's communications were intended, at least in part, to inform its customers about the fact of and reasons for its case against Frontgate. Whether additional reasons motivated Balsam's statements—including a desire to promote sales, a possibility discussed above—they are still covered by privilege. *See Weiland*, 814 F. Supp. 2d at 1040 (denying an anti-SLAPP motion because of the commercial speech exemption but granting a motion to dismiss because the litigation privilege protected statements made in a press release).

Because the last remaining state law claim is barred by both the California litigation privilege and the *Noerr-Pennington* doctrine, it is DISMISSED WITH PREJUDICE.

**D. Fees**

Balsam indicates that if its anti-SLAPP motion is granted, it will file a motion for fees and costs associated with filing it. Mot. 16–17; *see* Cal.Code Civ. Proc. § 415.16(c)(1) ("[A] prevailing defendant on a special motion to strike shall be entitled to recover his or her attorney's fees and costs."); *U.S. ex rel. Newsham v. Lockheed Missiles & Space Co.*, 190 F.3d 963, 971 (9th Cir. 1999) (applying the provision to state claims brought in federal court). Where the motion is granted only in part, the prevailing part is entitled to fees only on the claims that were stricken. *See Choyce v. SF Bay Area Indep. Media Ctr.*, No. 13-CV-01842-JST, 2013 WL 6234628, at *10 (N.D. Cal. Dec. 2, 2013). UCP counters that even if Balsam prevails here, it should not be entitled

to fees for its first anti-SLAPP motion. Oppo. 6. This issue is not yet before me. If it comes, I will remember that Balsam unnecessarily complicated these proceedings by filing motions to strike without accompanying motions to dismiss and that its motion to strike would have benefitted from a more detailed parsing of the allegations in UCP's first amended complaint (for example, Balsam should have addressed separately the allegations related to the online statements, the settlement, and the initiation of the litigation itself). *See Baral*, 1 Cal. 5th at 396 ("At the first step, the moving defendant bears the burden of identifying all allegations of protected activity, and the claims for relief supported by them.").

## II. MOTION TO DISMISS

UCP brings claims under Section 2 of the Sherman Act and Section 43(a) of the Lanham Act. These causes of action are based on the same allegations discussed in detail above. *See* FAC ¶¶ 55, 86-88. For the reasons discussed above, the *Noerr-Pennington* doctrine applies and bars the federal claims.[16]

## III. MOTIONS TO SEAL

The motions pending before me are more than "tangentially related to the merits of [the] case." *See Ctr. for Auto Safety v. Chrysler Grp., LLC*, 809 F.3d 1092, 1101 (9th Cir. 2016). Accordingly, the motions to seal are subject to the compelling justifications standard. *See id.* The parties seek to seal the Balsam-Frontgate settlement, along with references to its substance in the parties' filings. In the second case, I granted Balsam's request to seal this information after finding compelling justifications. *See* 16-cv-7255 Dkt. No. 145. Balsam again asserts that it "treats the information in the settlement agreement as trade secret, proprietary, and confidential" and that its disclosure would cause it competitive harm. Jacobs Declarations [Dkt. Nos. 41-1, 50-1] ¶ 4. UCP makes its request to seal this information only on behalf of Balsam because UCP does "not object to having the terms of the Balsam-Frontgate Settlement Agreement filed in the public." Dkt. No. 47; *see also* Dkt. No. 36 (requesting to seal references in the First Amended Complaint). The requests are all narrowly tailored and limited to descriptions of the precise terms

---

[16] Because I grant the motion to dismiss based on *Noerr-Pennington*, I do not address Balsam's claim splitting arguments.

in the Balsam-Frontgate settlement agreement, which there are compelling reasons to seal because of the potential harm that could befall Balsam if competitors or future opposing parties had access to the specific terms on which it settled. The requests are GRANTED.[17] That said, I will not seal the details of the agreement that are set forth in this Order. Those terms are necessary to understand the parties' dispute and the basis for my decision.

UCP moves to seal Exhibits A and B to the First Amended Complaint, which are contracts it has entered into with Frontgate and Cinmar and which contain sensitive information. Peden Decl. [Dkt. No. 36-1] ¶¶ 6-7. This request is GRANTED. Finally, Balsam filed a motion to seal part of its proposed supplemental brief to call attention to the Federal Circuit's decision reversing summary judgment in favor of UCP. Dkt. No. 61. The Federal Circuit has since unsealed the opinion; the motion is DENIED. The Clerk shall UNSEAL all entries at Dkt. No. 61.

## CONCLUSION

For the reasons set forth above, Balsam's motion to strike is GRANTED IN PART as to the second, third, and fourth causes of action, and the remaining claims are DISMISSED WITH PREJUDICE. Judgment in favor of Balsam shall be entered accordingly.

**IT IS SO ORDERED.**

Dated: October 15, 2019

William H. Orrick
United States District Judge

---

[17] I do note that Balsam failed to comply with Civil Local Rule 79-5(e), which requires that the party who in fact wants the information to remain under seal submit a declaration within four days. Because UCP filed part of its requests on behalf of Balsam, Balsam was required to provide the supporting declaration. Given that a majority of the parties' sealing requests relate to one document, and I have sealed that document in the past, I will overlook that error and treat the two Jacobs declarations as sufficient.

20